Louis Pechman, Esq.
Laura Rodríguez, Esq.
Lillian M. Marquez, Esq.
Pechman Law Group PLLC
488 Madison Avenue - 11th Floor
New York, New York 10022
(212) 583-9500
pechman@pechmanlaw.com
rodriguez@pechmanlaw.com
marquez@pechmanlaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSE GARCIA and MICHAEL RIOS, on behalf of
themselves and all others similarly situated,

                     Plaintiffs,

                     -against-

MURRAY PLACE INC. d/b/a BARLEYCORN       **COMPLAINT**
CRAFT BAR & GRILL, BIGTOM INC. d/b/a
THE IRISH AMERICAN PUB, DELBOYSNYC INC.
d/b/a/THE CRICKETERS ARMS, DALGLISH7 INC.   **COLLECTIVE ACTION**
d/b/a CARRAGHER'S PUB & RESTAURANT,
J.M.M.T. CAFE INC. d/b/a THE MAD HATTER
PUB & EATERY, BRIAN MCLAUGHLIN, and
PAUL LOFTUS,

                   Defendants.
------------------------------------------------------------------X

      Plaintiffs Jose Garcia and Michael Rios (collectively, "plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendants Murray Place Inc. d/b/a Barleycorn Craft Bar & Grill ("Barleycorn"), Bigtom Inc. d/b/a The Irish American Pub ("The Irish American"), DelboysNYC Inc. d/b/a The Cricketers Arms ("The Cricketers Arms"), Dalglish7 Inc. d/b/a Carragher's Pub & Restaurant ("Carragher's"), J.M.M.T. Cafe Inc. d/b/a The Mad Hatter Pub & Eatery ("The Mad Hatter"), Brian McLaughlin, and Paul Loftus (collectively, "defendants") allege:

## NATURE OF THE ACTION

1. This action arises out of defendants' failure to pay overtime pay as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 190 *et seq.* ("NYLL"), and defendants' failure to pay spread-of-hours pay as required by the NYLL.

2. Plaintiffs were employees of numerous bar and restaurants owned and operated by defendants that serve or served traditional British pubhouse food and drinks in locations throughout New York City (the "McLaughlin Pubs").

3. Defendant Brian McLaughlin ("McLaughlin") serves as the co-owner, manager, principal or agent of defendant corporate entities, which operate or operated the McLaughlin Pubs as a joint enterprise.

4. Defendant Paul Loftus ("Loftus") serves as a chef and manager at The Irish American, The Mad Hatter, and Barleycorn, and exercised control over plaintiffs' work schedule and other conditions of employment. He also served as co-owner, manager, principal, or agent of The Cricketers Arms.

5. Plaintiffs regularly worked over forty hours per week at the McLaughlin Pubs, but were paid the same hourly rate for all hours worked.

6. Defendants have systematically ignored the requirements of the FLSA and NYLL by failing to compensate plaintiffs and all others similarly situated at the statutorily required overtime wage rate for hours worked over forty per workweek, pay spread-of-hours pay for days when the workday spanned more than ten hours, and furnish accurate wage notices and wage statements.

7. Plaintiffs bring this action on behalf of themselves and all others similarly situated, seeking compensation for unpaid overtime and spread-of-hours pay,

liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA and the NYLL.

8. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly-situated employees, present and former, of defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION

9. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1337 (interstate commerce), and has supplemental jurisdiction over plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

10. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because the events giving rise to plaintiffs' claims occurred in this District, defendants operate and/or operated the McLaughlin Pubs in this District, and plaintiffs were employed by defendants in this District.

## THE PARTIES

**Plaintiff Jose Garcia**

11. Jose Garcia ("Garcia") is an adult residing in the Bronx, New York.

12. At various times between 2009 and 2016, Garcia worked as a cook for defendants at The Mad Hatter, The Cricketers Arms, The Irish American, Carragher's, and Barleycorn.

13. Throughout his employment, Garcia was an employee engaged in commerce or the production of goods for commerce on behalf of defendants.

14. Garcia consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings the claims asserted herein as a representative party of a prospective class of similarly-situated individuals under 29 U.S.C. § 216(b).

**Plaintiff Michael Rios**

15. Michael Rios ("Rios") is an adult residing in Queens, New York.

16. At various times between 2011 and 2016, Rios worked as a dishwasher for defendants at The Cricketers Arms, The Irish American, and Barleycorn.

17. Throughout his employment, Rios was an employee engaged in commerce or the production of goods for commerce on behalf of defendants.

18. Rios consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings the claims asserted herein as a representative party of a prospective class of similarly-situated individuals under 29 U.S.C. § 216(b).

**Defendants**

19. Defendants employed and/or jointly employed plaintiffs and similarly-situated employees during the relevant time periods.

20. Defendants are part of a single, integrated enterprise that has jointly employed plaintiffs and similarly-situated employees at all times relevant to this action.

21. During plaintiffs' employment, defendants' operations have been interrelated and unified.

22. During plaintiffs' employment, the McLaughlin Pubs have shared a common management, and have been centrally controlled and/or owned by defendants.

23. During plaintiffs' employment, defendants have centrally controlled the labor relations of the McLaughlin Pubs.

24. During plaintiffs' employment, defendants have allowed employees to

4

transfer or be shared by and between the McLaughlin Pubs without retraining.

**Defendant Murray Place Inc.**

25. Defendant Murray Place Inc. is a New York corporation that owns and operates Barleycorn, a sports bar and grill located at 23 Park Place, New York, New York, 10007.

26. Murray Place Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

27. Murray Place Inc. has an annual gross volume of sales in excess of $500,000.

28. Murray Place Inc. is, and was at all times relevant to this action, an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

**Defendant Bigtom Inc.**

29. Defendant Bigtom Inc. is a New York corporation that owns and operates The Irish American, a pub and restaurant located at 17 John Street, New York, New York, 10038.

30. Bigtom Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

31. Bigtom Inc. has an annual gross volume of sales in excess of $500,000.

32. Bigtom Inc. is, and was at all times relevant to this action, an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

**Defendant DelboysNYC Inc.**

33. Defendant DelboysNYC Inc. is a New York corporation that, at all times relevant to this action, owned and operated The Cricketers Arms, a pub and restaurant located at 57 Murray Street, New York, New York, 10007.

34. The Cricketers Arms closed to the public in February 2016.

35. During plaintiffs' employment, DelboysNYC Inc. had employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

36. DelboysNYC Inc. had an annual gross volume of sales in excess of $500,000 during plaintiffs' employment.

37. DelboysNYC Inc. was at all times relevant to this action an "enterprise engaged in interstate commerce" within the meaning of the FLSA..

**Defendant Dalglish7 Inc.**

38. Defendant Dalglish7 Inc. is a New York corporation that owns and operates Carragher's, a pub and restaurant located at 228 W. 39th Street, New York, New York, 10018.

39. Dalglish7 Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

40. Dalglish7 Inc. has an annual gross volume of sales in excess of $500,000.

41. Dalglish7 Inc. is, and was at all times relevant to this action, an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

**Defendant J.M.M.T. Cafe Inc.**

42. Defendant J.M.M.T. Cafe Inc. is a New York corporation that owns and operates The Mad Hatter, a pub and restaurant located at 360 3rd Avenue, New York, New York, 10016.

43. J.M.M.T. Cafe Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

44. J.M.M.T. Cafe Inc. has an annual gross volume of sales in excess of $500,000.

45. J.M.M.T. Cafe Inc. is, and was at all times relevant to this action, an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

**Defendant McLaughlin**

46. Defendant McLaughlin is a co-owner of defendant corporations and is sued individually in his capacity as an owner, officer, and/or agent of those corporations.

47. McLaughlin is listed as a principal on the New York State Liquor Licenses for each of the McLaughlin Pubs.

48. McLaughlin exercises sufficient control over the Pubs' operations to be considered plaintiffs' employer under the FLSA and NYLL.

49. At all times material herein McLaughlin had the authority to hire and fire employees and transfer employees between the McLaughlin Pubs. He also established and exercised authority regarding the pay practices at the McLaughlin Pubs.

**Defendant Loftus**

50. Defendant Loftus was, or held himself out to be, a co-owner of Defendant DelboysNYC Inc. d/b/a The Cricketers Arms and is sued individually in his capacity as an owner, officer and/or agent of that corporation.

51. In addition to exercising control over operations of The Cricketers Arms, he, from the position of chef, also exercised sufficient control over the operations of The Irish American, The Mad Hatter, and Barleycorn to be considered plaintiffs' employer under the FLSA and NYLL.

52. At all times material herein, he had the authority to hire and fire employees, transferred employees, including plaintiffs, between the McLaughlin Pubs, and established and exercised authority regarding the pay practices at these McLaughlin Pubs.

53. Loftus established plaintiffs' work schedules, transferred plaintiffs to work at different McLaughlin Pubs, and paid plaintiffs throughout their employment with defendants.

## COLLECTIVE ACTION ALLEGATIONS

54. The claims in this Complaint arising out of the FLSA are brought by plaintiffs on behalf of themselves and similarly situated persons (*i.e.*, kitchen workers) who are current and former employees of the McLaughlin Pubs since the date three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

55. The FLSA Collective consists of the McLaughlin Pubs' current and former kitchen staff who have been victims of defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*:

8

   a. failing to pay employees the applicable overtime rate for all time worked in excess of forty hours per week; and

   b. failing to keep accurate records of hours worked by employees as required by the FLSA.

56. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA.

57. Defendants' common policies and practices have also violated the FLSA Collective's rights under the NYLL by, *inter alia*:

   a. failing to pay employees the applicable overtime rate for all time worked in excess of forty hours per week;

   b. failing to pay employees spread-of-hours compensation of one hour's pay at the minimum wage for each day in which their workday spanned more than ten hours; and

   c. failing to provide the FLSA Collective annual wage notices and timely, accurate wage statements.

58. Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damage to plaintiffs and the FLSA Collective.

59. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly-situated employees are known to defendants, are readily identifiable, and locatable through the records of each pub. These similarly-situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

### PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Garcia's Employment**

60. Over the last seven years, Garcia worked at all of the McLaughlin Pubs as a cook.

61. Garcia worked at The Mad Hatter in 2009 for six months.

9

62. From approximately Summer 2010 to January 2014, Garcia worked at The Cricketers Arms, and occasionally at The Irish American when Loftus required it.

63. In January 2014, Garcia returned to The Mad Hatter and worked there until August 5, 2014.

64. From October 10, 2014, until in or about December 2014, Garcia split his week working three days at The Mad Hatter and three days at The Cricketers Arms.

65. Garcia then transferred to The Irish American, where he worked until McLaughlin opened Carragher's in August 2015.

66. From August 7, 2015, to in or about May 2016, Garcia worked at Carragher's.

67. Garcia then transferred to Barleycorn, where he worked all of June 2016.

68. Many of Garcia's transfers were done at the behest of Loftus, in accordance with the staffing needs of the McLaughlin Pubs.

69. At The Mad Hatter, Garcia generally worked six days per week from 1:00 p.m. to 12:00 a.m., totaling sixty-six hours per week.

70. At The Cricketers Arms, Garcia generally worked six days per week from 12:00 p.m. to 12:00 a.m., totaling seventy-two hours per week.

71. At The Irish American, Garcia generally worked six days per week from 2:00 p.m. to 2:00 a.m., totaling seventy-two hours per week.

72. At Carragher's, Garcia's generally worked the dinner shifts on three days each week, from 4:00 p.m. to 12:00 a.m. the next day, and double shifts (lunch and dinner) on three days each week, from 11:00 a.m. or 12:00 p.m. to 12:00 a.m. the next morning, totaling approximately sixty to sixty-three hours per week. On seven-day workweeks, Garcia worked an additional double shift, totaling seventy-two to seventy-six hours per week.

10

73. At Barleycorn, Garcia generally worked six days per week from 3:00 p.m. to 12:00 a.m., totaling fifty-four hours per week.

74. Garcia did not receive an uninterrupted break for meals or rest.

75. Throughout Garcia's employment, Garcia was paid a rate of $13 per hour worked, including hours worked over forty per workweek.

76. Garcia was not paid at an overtime rate of one and one-half (1 ½) times his regular rate of pay for hours worked over forty per workweek.

77. From the time Garcia began working for defendants until mid-2016, he received his wages in cash.

78. Beginning in mid-2016, Garcia received payment for the first forty hours worked by check and for the remainder of his hours worked at a straighttime rate in cash.

79. Defendants did not pay Garcia one additional hour's pay at the full minimum wage for each workday that exceeded ten hours.

80. Additionally, defendants failed to furnish Garcia with annual wage notices.

81. Defendants also failed to furnish Garcia with each wage payment an accurate wage statement stating, *inter alia*, the hours he worked, his rates of pay, and his gross wages.

**Plaintiff Rios's Employment**

82. Rios worked as a dishwasher for defendants six days per week for approximately fifty-four hours per week.

83. Rios initially worked three days per week at The Cricketers Arms and three days per week at The Irish American, from 4:00 p.m. to 12:00 a.m. the next day.

11

84. From in or about June 2011 to in or about 2015, Rios worked six days per week at The Cricketers Arms from 7:00 a.m. to 4:00 p.m.

85. At some point in 2015, as The Cricketers Arms began winding down its business, and Loftus directed Rios and other employees of The Cricketers Arms to transfer goods from The Cricketers Arms to Barleycorn.

86. After The Cricketers Arms closed, Loftus and McLaughlin transferred the employees of The Cricketers Arms, including Rios, to work full time at Barleycorn.

87. At Barleycorn, Rios generally worked six days per week, from 6:00 a.m. to 3:00 p.m.

88. For the first year of his employment, Rios was paid in cash at a rate of $8 per hour worked, including those over forty per workweek.

89. From in or about May 2012 until the end of his employment, Rios was paid in cash at a rate of $10 per hour worked, including those over forty per workweek.

90. Rios was not paid at an overtime rate of one and one-half (1 ½) times his regular rate of pay for hours worked over forty per workweek.

91. When Rios began working at Barleycorn, he attempted to log his hours using an electronic time-keeping system. Soon thereafter, he was told not to log his hours through that system.

92. One week after he began working full time at Barleycorn, Rios was paid $540 by check, based on a $10 hourly rate. Although each check reflected that he worked only forty hours, Rios in fact continued to work fifty-four hours each week.

93. After complaining about the sufficiency of his pay, Rios was paid $580 by check, which continued to reflect a forty-hour workweek, though Rios worked fifty-four hours per week.

94. Additionally, defendants failed to furnish Rios with annual wage notices.

95. Defendants also failed to furnish Rios with each wage payment an accurate wage statement stating, *inter alia*, the hours he worked, his rates of pay, and his gross wages.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

96. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

97. Defendants are employers within the meaning of 29 U.S.C. § 201, *et seq.*, and employed plaintiffs.

98. Plaintiffs and members of the FLSA Collective are non-exempt employees under the FLSA and NYLL.

99. Plaintiffs and the FLSA Collective regularly worked over forty hours per week.

100. Defendants were required to pay plaintiffs and the FLSA Collective one and one-half (1½) times the regular rate of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq.*

101. Defendants failed to pay plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

102. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay plaintiffs and members of the FLSA Collective overtime wages.

103. Due to defendants' violations of the FLSA, plaintiffs and members of the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

104. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

105. Defendants are employers within the meaning of NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed plaintiffs.

106. Under the NYLL and supporting New York State Department of Labor Regulations, defendants were required to pay plaintiffs and other kitchen workers one and one half (1 ½) times the regular rate of pay for all hours they worked in excess of forty.

107. Defendants failed to pay plaintiffs and other kitchen workers the overtime wages to which they were entitled under the NYLL.

108. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs and other kitchen workers overtime wages.

109. Due to defendants' willful violations of the NYLL, plaintiffs and other kitchen workers are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre-judgment and post-judgment interest.

## THIRD CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

110. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

111. Defendants willfully failed to pay Garcia and other kitchen workers additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked more than ten hours.

14

112. By defendants' failure to pay Garcia and other kitchen workers spread-of-hours pay, defendants willfully violated the NYLL Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §§ 137-1.7, 137-3.10.

113. Due to defendants' willful violations of the NYLL, Garcia and other kitchen workers are entitled to recover an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest, and liquidated damages.

**FOURTH CLAIM**
**(New York Labor Law – Wage Theft Prevention Act- Wage Notice)**

114. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

115. In violation of NYLL § 191, defendants failed to furnish to plaintiffs and other kitchen workers at the time of hiring, whenever there was a change to an employee's rate of pay, and on or before February 1st of each year of employment through 2014, a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

116. Due to defendants' willful violations of NYLL § 195(1) prior to December 31, 2014, plaintiffs and other kitchen workers are entitled to statutory penalties of $50

each week that the violation occurred, up to a maximum of $2,500 each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL § 198(1-b).

117. Due to defendants' willful violations of NYLL § 195(1) since December 31, 2014, plaintiffs and other kitchen workers are entitled to recover from defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

### FIFTH CLAIM
### (New York Labor Law – Wage Theft Prevention Act- Wage Statements)

118. Plaintiffs repeat and reallege all foregoing paragraphs as if set forth herein.

119. Defendants failed to furnish plaintiffs and other kitchen workers with each payment of wages an accurate statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL § 195(3).

120. Due to defendants' willful violations of NYLL § 195(3) prior to December 31, 2014, plaintiffs and other kitchen workers are entitled to recover from defendants liquidated damages of $100 per workweek that the violation occurred, up to a maximum of $2,500.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

16

121. Due to defendants' willful violations of NYLL § 195(3) since December 31, 2014, plaintiffs and other kitchen workers are entitled to recover from defendants liquidated damages of $250 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the FLSA Collective, respectfully request that this Court enter a judgment:

a. authorizing the issuance of notice at the earliest possible time to all kitchen workers who were employed by defendants during the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

b. declaring that defendants have violated the overtime provisions of the FLSA and the NYLL;

c. declaring that defendants have violated the spread-of-hours provisions of the NYLL and New York State Department of Labor Regulations;

d. declaring that defendants have violated the notice provisions and wage statement requirement of the NYLL and Wage Theft Prevention Act;

e. declaring that defendants' violations of the FLSA and NYLL were willful;

f. awarding plaintiffs and the FLSA Collective unpaid overtime wages;

g. awarding plaintiffs and the FLSA Collective unpaid spread-of-hours compensation;

17

      h.      awarding plaintiffs and the FLSA Collective liquidated damages as a result of defendants' failure to timely furnish wage notices and wage statements as required by the NYLL;

      i.      awarding plaintiffs and the FLSA Collective liquidated damages in an amount equal to twice the total amount of the wages found to be due, pursuant to the FLSA and the NYLL;

      j.      awarding plaintiffs and the FLSA Collective pre- and post-judgment interest under the FLSA and the NYLL;

      k.      awarding plaintiffs and the FLSA Collective reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

      l.      awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
       October 4, 2016

PECHMAN LAW GROUP PLLC

By: _____
Louis Pechman, Esq.
Laura Rodríguez, Esq.
Lillian M. Marquez, Esq.
488 Madison Avenue - 11th Floor
New York, New York 10022
(212) 583-9500
pechman@pechmanlaw.com
rodriguez@pechmanlaw.com
marquez@pechmanlaw.com
*Attorneys for Plaintiffs*